689 So.2d 1226 (1997)
James M. SMITHSON, Appellant,
v.
STATE of Florida, Appellee.
No. 96-1489.
District Court of Appeal of Florida, Fifth District.
March 14, 1997.
*1227 James B. Gibson, Public Defender, and Rebecca M. Becker, Assistant Public Defender, Daytona Beach, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Michael D. Crotty, Assistant Attorney General, Daytona Beach, for Appellee.
GRIFFIN, Judge.
James M. Smithson ["Smithson"] appeals his conviction for robbery with a firearm or destructive device. We affirm.
On October 3, 1995, at approximately 2:20 a.m., Smithson entered a 7-Eleven Store in Orlando, Florida, carrying a gun. He pointed the gun at a sales clerk, Bryan Nye, but almost immediately reassured Nye that he did not intend to hurt him; he just wanted a beer, which was locked in the cooler.[1] Smithson, pointing the gun in the air, then led Nye into the cooler, where Smithson retrieved a beer. Upon leaving the cooler, Smithson again assured Nye he was not going to hurt him and told him that, instead, he intended to kill himself. Smithson, despondent over a break-up with his girlfriend, then aimed the gun at his own neck and went behind the counter, where he drank at least one beer. He told Nye to get rid of a second clerk, Hari Agnihotri, who had been outside,[2] and Nye complied. Nye ultimately escaped when Smithson permitted him to go outside to get rid of some customers. Smithson then engaged in a stand-off with police until 8:00 a.m., during which he fired his gun once in the air. He surrendered without incident, apparently withdrawing $92.68 from his pocket and placing it on the counter. Based on these facts, Smithson was charged by information with (1) robbery with a firearm or destructive device[3] and (2) shooting at, within or into a building.[4]
At trial, the state based its robbery charge on the theory that the beer had been taken from Nye by "assault" or by "putting him in fear." Nye, however, testified that he never really felt threatened by Smithson during the incident, nor did he feel that Smithson was going to hurt him. Instead, he thought that Smithson was more intent on harming himself. Nye also testified that Smithson had not pointed the gun at him, except right at first, and that when this occurred Nye was very tired and simply confused about what was going on. When asked why he had cooperated with Smithson, however, such as by listening to him talk and helping him retrieve the beer, Nye repeatedly testified that he did as Smithson asked because he was carrying a gun and Nye simply did not know what Smithson would do. Nye also testified, "I didn't feel he would hurt me. As long as I did what he said I would be fine." Finally, Nye testified that he thought that doing what Smithson said was the best course of action, in part because Smithson told him he had just finished smoking "about a pound" of crack cocaine.
At the conclusion of the state's case, and again at the close of all the evidence, defense counsel moved for a judgment of acquittal on the robbery charge, arguing that there was no evidence of any "taking" of property and no evidence that Smithson obtained the beer by force, violence, assault, or putting Nye in fear. The trial court denied the motion.
*1228 During the charge conference, the state asked the court to give the following special instruction concerning the requirement that the beer had to been taken from Nye by the use of force, violence, or assault or by putting him in fear:
If the circumstances were such as to ordinarily induce fear in the mind of a reasonable person, then the victim may be found to have been in fear, and actual fear need not be precisely shown.
The court granted the request, and so instructed the jury over Smithson's objection.
Smithson was convicted of robbery with a firearm or destructive device and shooting at, within or into a building, as charged in the information. He was sentenced to concurrent terms of six years in prison on each of the offenses.
Smithson first complains that he is entitled to reversal of his conviction for robbery because of the special instruction. Smithson objects that "the trial court basically told the jury (or at least intimated) that Brian Nye was not a `reasonable person' and thus the jury should simply find [Smithson] guilty of robbery." Smithson also complains that the instruction "virtually directed the jury to return a guilty verdict."
We find no merit in these arguments. Robbery requires proof of a taking by "the use of force, violence, assault or putting in fear." § 812.13(1), Fla. Stat. (1993). Here, the state appears to have relied on a taking by "assault" or "putting in fear." The fear contemplated by the statute is the "fear of death or great bodily harm." Brown v. State, 397 So.2d 1153, 1155 (Fla. 5th DCA 1981).
This court previously has applied an "objective" approach to determining whether a victim was put in fear. Brown, supra. Brown involved a defendant who had approached a bank teller and handed her a note on which was written, "this is a holdup!" When the teller asked appellant if he were serious, he replied, "yes, I'm serious, and if you love your family, you'll do as I tell you." The teller never saw a gun during the robbery because the defendant kept his hands out of the sight, and the teller testified at trial that she was not nervous and "wasn't upset at all" during the course of the robbery. A teller working next to the victim also testified that the victim did not appear to be nervous, but rather acted so calmly during the robbery that she was not aware that the victim was being robbed. On appeal, the defendant argued that he was entitled to reversal of his conviction because the state had failed to demonstrate that the victim had been placed in fear of death or great bodily harm. This court disagreed, stating:
To sustain a conviction for robbery, it is not necessary to show that actual violence was used, nor is it required that the victim be placed in actual fear. Montsdoca v. State, 84 Fla. 82, 93 So. 157 (Fla.1922). If the circumstances attendant to the robbery were such as to ordinarily induce fear in the mind of a reasonable person, then the victim may be found to be in fear for the purpose of the robbery statute, and actual fear need not be strictly and precisely shown. Flagler v. State, 189 So.2d 212 (Fla. 4th DCA 1966), affirmed 198 So.2d 313 (Fla.1967); Thomas v. State, 183 So.2d 297 (Fla. 3d DCA 1966). This is so even where the victim specifically states that he was never in fear during the course of the robbery. Thomas, supra. The victim's statement that she was unafraid is therefore not controlling: the question is not whether the victim here actually feared appellant, but whether a jury could conclude that a reasonable person under like circumstances would be sufficiently threatened to accede to the robber's demands.
Id. at 1155 (emphasis added). Based on Brown, we find no error in the instruction given the jury.
Smithson also contends that the trial court erred by denying his motion for a judgment of acquittal on the charge of robbery, contending there was no evidence that any property was "taken" because the evidence shows that he left at least $92.68 in cash for the single beer that he allegedly stole. While the evidence plainly shows that the money on the counter was Smithson's, the evidence appears sufficient to create a jury question on whether Smithson simply placed the money on the counter as part of *1229 his surrender or in a belated attempt to avoid a prosecution for robbery. Indeed, Smithson himself testified that he had volunteered to empty his pockets as part of the negotiations. Additionally, an officer testified that it is routine to tell surrendering suspects to put down their weapons, empty their pockets, and raise their hands above their head. The permissible conclusion that Smithson's "payment" was simply a belated attempt to avoid a robbery conviction is consistent with Smithson's own testimony that he had told the negotiator "that I didn't want to be charged with robbery."
AFFIRMED.
COBB and ANTOON, JJ., concur.
NOTES
[1] There was apparently a 2:00 a.m. cut-off time on beer sales.
[2] Agnihotri was apparently out back, checking on a shed, when Smithson first entered the store.
[3] §§ 775.087(2)(a) and 812.13(2)(a), Fla. Stat. (1993).
[4] § 790.19, Fla. Stat. (1993).