709 So.2d 636 (1998)
STATE of Florida, Appellant,
v.
Derrick R. BALDWIN, Appellee.
No. 97-01678.
District Court of Appeal of Florida, Second District.
April 24, 1998.
*637 Robert A. Butterworth, Attorney General, Tallahassee, and Erica M. Raffel, Assistant Attorney General, Tampa, for Appellant.
James Marion Moorman, Public Defender, and Robert D. Rosen, Assistant Public Defender, Bartow, for Appellee.
NORTHCUTT, Judge.
Derrick Baldwin was charged with the unarmed robbery of a bank in Tampa. He moved to dismiss the charge pursuant to Florida Rule of Criminal Procedure 3.190(c)(4), contending that the undisputed material facts failed to establish a prima facie case against him. The circuit court granted the motion, and the State of Florida appealed. We conclude that the court should not have dismissed the charge. We reverse and remand for further proceedings.
In deposition and at the hearing on the motion to dismiss, the teller on duty at the time recounted that a man wearing a baseball cap and sunglasses entered the bank lobby and approached her teller station. When she asked the man if she could help him, he retrieved a paper from his wallet and handed it to her. It was a handwritten note which stated simply "money" or "your money." The teller asked the man if he was kidding. She recalled that he either shook his head or stated "no." The teller then opened her cash drawer and retrieved a wrapped bundle of "bait" money, rigged with dye. But when she offered it to the man, he refused to take it, again shaking his head.
The teller testified that at this point she became frightened. She returned the bait money to her drawer, then gave the man three or four thousand dollars. He asked if she had a bag. She replied that she did not, but offered an interoffice envelope which he accepted. When the man had turned away and was leaving the bank lobby, the teller pressed an alarm switch and tearfully told a coworker that she had been robbed.
The teller testified that the man did not brandish a weapon during the episode. She recalled that his shirt tail was untucked, but when he stood at the teller counter her view of his lower body was obstructed such that she could not have observed any telltale bulges in his clothing.
When moving to dismiss under rule 3.190(c)(4), a defendant has the burden to demonstrate that the undisputed material facts fail to establish a prima facie case of guilt. See State v. Anderson, 536 So.2d 1166 (Fla. 2d DCA 1988). When deciding such a motion, the court must refrain from resolving fact disputes, and it must draw all reasonable inferences in favor of the State. See State v. Diaz, 627 So.2d 1314 (Fla. 2d DCA 1993).
Section 812.13(1), Florida Statutes (1995), defines the offense of robbery as the taking of money or property from another with the intent to permanently or temporarily deprive the person or owner of the money or property "when in the course of the taking, there is the use of force, violence, assault, or putting in fear." Because this case did not involve the use of force, violence, or assault, the issue before the circuit court was whether a jury could find that Baldwin's actions put the victim in fear. The rule in this regard is that if the circumstances attendant to the robbery were such as to ordinarily induce fear in the mind of a reasonable person, then the victim may be found to be in fear for the purpose of the robbery statute, and actual fear need not be proved. See Schram v. State, 614 So.2d 646 (Fla. 2d DCA 1993); Flagler v. State, 189 So.2d 212 (Fla. 4th DCA 1966), affirmed, 198 So.2d 313 (Fla. 1967).
We note that the test does not require conduct that is, itself, threatening or *638 forceful. Rather, a jury may conclude that, in context, the conduct would induce fear in the mind of a reasonable person notwithstanding that the conduct is not expressly threatening. For example, in Flagler, a housewife was driving at night, accompanied by her four-year-old child. When she stopped at a stop sign, a man she did not know opened the car's front passenger door without warning and climbed into the car. The man sat on the front passenger seat for several minutes without speaking. Then he picked up the woman's handbag and fled. The man was apprehended and convicted of robbery. On appeal the Fourth District held that the circumstances abundantly met the reasonable person test for determining whether a defendant's actions put the victim in fear. 189 So.2d at 213-214. Indeed, in its review of the case, the Florida Supreme Court wrote that "in this setting the mother would have been less than human if she had not been frightened out of her wits...." Flagler v. State, 198 So.2d 313, 314 (Fla. 1967).
In Butler v. State, 602 So.2d 1303 (Fla. 1st DCA 1992), the defendant walked into a dry cleaning establishment during business hours, carrying a pair of pants draped over one hand. He directed one of the employees to open the cash register and to give him its contents. The employee complied, whereupon the defendant left the store. The defendant displayed no weapon and made no verbal threats during the incident. Although the First District held that the State's proof did not sustain the defendant's conviction of armed robbery, it found the evidence sufficient to convict him of robbery.
Here, as in those cases, the perpetrator made no explicit threats against the teller and did not display a weapon. Nevertheless, we believe that a jury could find that the circumstances attendant to his actions ordinarily would place a reasonable person in fear. Among those circumstances was that the crime appeared to be planned in advance: the man had taken steps to obscure his features with a cap and sunglasses, and he had written the note beforehand. Further, the crime took place during normal business hours at a bank, a place generally known to have taken extraordinary security precautionsincluding armed guardsagainst precisely this sort of occurrence. Moreover, there was potentially much at stake, in light of the fact that banks have large amounts of cash on the premises. Certainly, given the realities of the day, a reasonable person could fear that someone brazen enough to plan and execute a daylight theft from a bank, at the risk of severe or even fatal injury, would have armed himself in advance. Thus, in this case, the fact that the perpetrator did not openly display a weapon was not as important as the teller's inability to discern that he did not possess one.
We distinguish this court's ruling in Schram v. State, 614 So.2d 646 (Fla. 2d DCA 1993), in which Schram entered a convenience store and obtained two twelve-packs of beer. After consulting with a companion and realizing that neither had any money, Schram announced to the clerk that she was simply going to take the beer. She then retrieved the beer from the checkout counter and walked out. Schram was convicted of robbery with a deadly weapon based on the clerk's testimony that he saw a bulge in her back pocket which he assumed was a knife, and that she moved her hands toward her back before she took the beer from the counter. The clerk admitted that Schram never drew a knife or weapon, and that she made no threats. He testified that much of his fear was generated by her unusual appearance. Finding that the clerk's fear was not reasonable, this court reversed Schram's conviction.
In contrast to the present case, Schram's actions suggested nothing more than a spur-of-the-moment attempt to shoplift $16.52 worth of beer from a convenience store. Shoplifting generally is a small-stakes crime, dependent more on stealth than on violence, which exposes the perpetrator to only slight risk of physical harm. Consequently, in most instances shoplifters pose little threat of physical harm to their victims. As we have discussed, bank theft is a far different matter. It involves inherent factors that a jury could conclude would ordinarily place a reasonable person in fear.
*639 We reverse the dismissal of the robbery charge, and we remand with directions that the circuit court reinstate the charge and conduct further proceedings.
PARKER, C.J., and PATTERSON, J., concur.