842 So.2d 963 (2003)
Joseph MAGNOTTI, Appellant,
v.
STATE of Florida, Appellee.
No. 4D02-300.
District Court of Appeal of Florida, Fourth District.
March 26, 2003.
Rehearing Denied May 7, 2003.
*964 Carey Haughwout, Public Defender, and Jeffrey L. Anderson, Assistant Public Defender, West Palm Beach, for appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Heidi L. Bettendorf, Assistant Attorney General, West Palm Beach, for appellee.
STEVENSON, J.
Appellant, Joseph Magnotti, was tried by jury and convicted of strong arm robbery of a bank. On appeal, Magnotti claims that the robbery conviction cannot stand because the evidence was legally insufficient to demonstrate the crucial element of taking by putting in fear. Magnotti argues that a reasonable person in the bank teller's position would not have been placed in fear of harm during the robbery because the teller's booth was located in a secure area behind a bullet-proof glass window. We affirm.
The charges in this case arose out of appellant's robbery of a First Union Bank. On July 13, 2001, Sally Wood was a teller-trainee at First Union, having worked there for less than two months. In the bank, a thick bullet-proof glass pane, with a small opening where money can pass through, separates the teller station from the customer. At around 3:30 p.m., appellant approached Wood's window and stated, "This is a hold-up, I want your hundreds, fifties and twenties, now." Wood responded, "Pardon me?" According to Wood, Magnotti repeated the same words "very firmly,""This is a hold up, I want your hundreds, fifties and twenties, now." Ultimately, Wood piled about $10,000 on the counter and gave it to Magnotti. Magnotti put the money in a brown paper bag and walked aggressively out of the bank. Wood testified that, despite being behind the protective glass and knowing that she "could not be hurt because of that wall," she was "deathly afraid."[1] She further stated that, although she did not see Magnotti carrying any weapons, she did not know for sure whether he was actually carrying one. At the time, there were about fifteen other customers in the line.
"Robbery requires proof of a taking by `the use of force, violence, assault or putting in fear.'" Smithson v. State, 689 So.2d 1226, 1228 (Fla. 5th DCA 1997)(quoting § 812.13(1), Fla. Stat. (1993)). Section 812.13(1), Florida Statutes (2001), provides:

*965 "Robbery" means the taking of money or other property which may be the subject of larceny from the person or custody of another, with intent to either permanently or temporarily deprive the person or the owner of the money or other property, when in the course of the taking there is the use of force, violence, assault, or putting in fear.
Here, the State relied on taking by "putting in fear" to establish the robbery. There was no evidence that Magnotti actually had a firearm or other weapon.
"The fear contemplated by the statute is the `fear of death or great bodily harm.'" Smithson, 689 So.2d at 1228 (quoting Brown v. State, 397 So.2d 1153, 1155 (Fla. 5th DCA 1981)). The rule in this regard is that if the circumstances attendant to the robbery were such as to ordinarily induce fear in the mind of a reasonable person, then the victim may be found to be in fear for the purpose of the robbery statute, and actual fear need not be proved. See State v. Baldwin, 709 So.2d 636 (Fla. 2d DCA 1998). Thus, the controlling factor is not necessarily the victim's subjective state of mind, but whether a jury could conclude that a reasonable person, under like circumstances, would have felt sufficiently threatened to accede to the robber's demands. See Woods v. State, 769 So.2d 501 (Fla. 5th DCA 2000).
In the instant case, not only did the victim testify that she was afraid, but the circumstances of the crime were also such that the jury could conclude that fear of death or great bodily harm under the circumstances was objectively justifiable. In ordinary parlance, the phrase "hold-up" connotes a forcible theft accomplished at gun-point or through the use of any other weapon available to the assailant. See Brown, 397 So.2d at 1155 ("The expression `holdup,' in its ordinary significance, means a forcible detention of the person held with the intent to commit robbery, and implies the necessary force to carry out that purpose.").
In discussing the reasonableness of a bank teller's fear of great bodily harm during a robbery where the teller did not see the defendant with a gun, the court in State v. Baldwin, 709 So.2d 636, 638 (Fla. 2d DCA 1998), noted that:
[A bank is] a place generally known to have taken extraordinary security precautionsincluding armed guards against precisely this sort of occurrence. Moreover, there was potentially much at stake, in light of the fact that banks have large amounts of cash on the premises. Certainly, given the realities of the day, a reasonable person could fear that someone brazen enough to plan and execute a daylight theft from a bank, at the risk of severe or even fatal injury, would have armed himself in advance. Thus, in this case, the fact that the perpetrator did not openly display a weapon was not as important as the teller's inability to discern that he did not possess one.
Here, too, the jury could conclude that an ordinary person in the victim's place would have reasonably feared that Magnotti had a gun or other weapon which he would have used if he did not get the money he demanded.
Lastly, contrary to appellant's argument, we do not believe that the fact that Wood was stationed behind bullet-proof glass disposes of the "fear" question. We believe that the jury could conclude that the prospect of putting a presumed bullet-proof glass shield to the test by standing behind it when a gun is fired would ordinarily place a reasonable person in fear. Indeed, even though Wood testified that she was confident that the shield would protect her, she nevertheless maintained *966 that she was "deathly afraid" during the robbery. We conclude that the victim's inarticulate, subjective fear coupled with the objective circumstances attendant to this robbery more than satisfy the taking "by putting in fear" element of the robbery statute.[2]
Accordingly, the trial court properly denied the motion for judgment of acquittal and the conviction on review is AFFIRMED.
GROSS and MAY, JJ., concur.
NOTES
[1] On redirect examination, Wood stated: "It's just the mere fact of somebody coming up to you and saying `Give me your money.' It scares you to death. Of course you're going to do exactly what they say.... Yes, I was in fear."
[2] At least one Florida case suggests that the victim's fear that the assailant will injure a third party in the vicinity if the assailant's demands are not met may be a legitimate, qualifying "fear" under the robbery statute. See Flagler v. State, 198 So.2d 313, 314 (Fla. 1967). Here, although Wood may have been protected, if Magnotti had discharged a firearm in the bank, he could have injured other customers and employees not located behind the bullet-proof glass.